OPINION
{¶ 1} Defendant-appellant, Peterbilt of Cincinnati, Inc., ("Peterbilt"), appeals the decision of the Clermont County Court of Common Pleas in a breach of contract action. We affirm the decision of the trial court.
 {¶ 2} Peterbilt intended to build an addition to their existing dealership. Plaintiff-appellee, Gordon Construction, Inc. ("Gordon"), attempted to sell Peterbilt a building addition through a process called "design and build." Gordon sent Peterbilt a letter of intent describing their "design and build" agreement.
 {¶ 3} The letter of intent stated that Gordon "will retain firms to assist in the development of preliminary site drawings, a topographical and site survey and preliminary architectural drawings for this project. Any costs associated with these services will be at the expense of Peterbilt * * * and paid upon their presentation. These costs should not exceed $6,000. When the project is developed, theses costs will be applied to the applicable budget line and equity for the project." Sam Stratton, the manager of Peterbilt in Cincinnati, signed the letter of intent.
 {¶ 4} Gordon selected KBA, Inc., as architects and McGill Smith Punshon, Inc. ("MSP"), as engineers to develop the preliminary drawings. On July 18, 2000, Gordon, KBA, and MSP presented a set of plans to Peterbilt. Al Daugherty of Peterbilt asked Gordon, "who do you suppose is going to pay for all these drawings up to this point?" Gordon responded that it was "in the cost of business and would be in the cost of the project itself." However, Gordon stated, "if you get somebody else to build this addition then there will be a charge."
 {¶ 5} After the initial meeting, Peterbilt's requirements changed and modifications to the project were made. KBA and MSP both indicated to Peterbilt that the modifications would change the scope of their work and additional drawings would be required. Peterbilt did not object to the additional work.
 {¶ 6} Peterbilt and Gordon met again in August of 2000. At that time Peterbilt indicated that the cost of the addition project was too high. A revised budget for the project was presented to Peterbilt in September. However, Peterbilt informed Gordon that it would not proceed with the project.
 {¶ 7} KBA billed Gordon $7,293.49 for their services. MSP billed Gordon $10,808.05 for their services. Gordon sent Peterbilt the KBA and MSP invoices. Peterbilt declined to pay the invoices.
 {¶ 8} Gordon filed a complaint for breach of contract and unjust enrichment against Peterbilt on January 24, 2001. The issues were tried to the court. The trial court found for Gordon and awarded $18,101.54 plus prejudgment interest at the statutory rate. Peterbilt appeals the decision raising four assignments of error:
 Assignment of Error No. 1: {¶ 9} "THE TRIAL COURT ERRED IN AWARDING PREJUDGMENT INTEREST PURSUANT TO OHIO REVISED CODE 1343.03(A)."
 {¶ 10} The decision to award or deny prejudgment interest is within the discretion of the trial court, and will not be reversed absent an abuse of that discretion. Feist v. Plesz, Summit App. No. 21312, 2003-Ohio-2843, at ¶ 18, citing Scioto Mem. Hosp. Assn., Inc. v.Price Waterhouse, 74 Ohio St.3d 474, 479, 1996-Ohio-365. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 11} R.C. 1343.03(A) governs a trial court's award of prejudgment interest on claims arising out of breach of contract. Baldwinv. Rieger, Trumbull App. No. 2001-T-0106, 2002-Ohio-4368. Under R.C.1343.03(A), prejudgment interest is based upon the premise that a party to a contract should not retain the use of money owed under a contract when that amount is due and payable to the other contracting party. Luftv. Perry County Lumber Supply Co., Franklin App. No. 02AP-559, 2003-Ohio-2305.
 {¶ 12} When money becomes "due and payable * * * upon a contract or other transaction * * * the creditor is entitled to interest at the rate of ten percent per annum[.]" R.C. 1343.03(A). An award of prejudgment interest "encourages prompt settlement and discourages defendants from opposing and prolonging, between injury and judgment, legitimate claims. Furthermore, prejudgment interest does not punish the party responsible for the underlying damages * * * but, rather, it acts as compensation and serves ultimately to make the aggrieved party whole."Royal Elec. Constr. Corp. v. Ohio State Univ., 73 Ohio St.3d 110,116-117, 1995-Ohio-131.
 {¶ 13} The letter of intent states, "Gordon Construction, Inc. will retain firms to assist in the development of preliminary site drawings, a topographic and site survey and preliminary architectural drawings for this project. Any costs associated with these services will be at the expense of Peterbilt of Cincinnati, Inc. and paid upon their presentation. These costs should not exceed $6,000. When the project is developed, these costs will be applied to the applicable budget line and equity for the project."
 {¶ 14} Stratton signed the letter of intent on behalf of Peterbilt. Gordon retained KBA and MSP to prepare architectural and engineering drawings. Preliminary drawings were prepared and presented to Stratton. Upon presentation of the drawings to Al Daugherty of Peterbilt, requests were made for modifications of the drawings. Peterbilt wanted to relocate the manner in which vehicles were serviced in the existing building. Peterbilt also wanted the architects to address how oil would be dispensed within the building. KBA and MSP were directed to change their plans.
 {¶ 15} Because multiple changes were requested, multiple drawings were prepared. KBA billed Gordon $7,293.49 for their services. MSP billed Gordon $10,808.05 for their services. When it became apparent that Peterbilt was not going forward with the project, Gordon submitted the KBA and MSP bills to Stratton. Stratton forwarded the invoices to Peterbilt. Peterbilt decided not to pay the bills. Gordon paid KBA and MSP.
 {¶ 16} Peterbilt was bound by the letter of intent to pay for the project development. Once the $18,101.54 became due and payable the creditor was entitled to interest if the contract was breached. The trial court did not abuse its discretion in awarding prejudgment interest on the amounts that were due and payable. Therefore, the first assignment of error is overruled.
 Assignment of Error No. 2: {¶ 17} "THE TRIAL COURT ERRED IN INTERPRETING THE LETTER OF INTENT BY FINDING THAT THE $6,000.00 COST TERM WAS A MERE ESTIMATE INSTEAD OF A CONTRACT."
 {¶ 18} Generally, "a letter of intent is not in principle a contract, but rather merely a contract to continue to bargain in good faith." Mandalaywala v. Zaleski (1997), 124 Ohio App.3d 321, 334, at fn. 3, citing Corbin on Contracts (Perillo Ed., Rev. 1993) 46, Section 1.16. However, "there are times when letters of intent are signed with the belief that they are letters of commitment." Id.
 {¶ 19} A contract is "a promise or a set of promises, the breach of which the law provides a remedy, or the performance of which the law in some way recognizes a duty." Ford v. Tandy Transp., Inc. (1993),86 Ohio App.3d 364, 380. In order for a party to be bound to a contract, the party must consent to its terms, the contract must be certain and definite, and there must be a meeting of the minds of both parties.Cleveland Builders Supply Co. v. Farmers Ins. Group of Cos. (1995),102 Ohio App.3d 708, 712.
 {¶ 20} If a provision cannot be determined from the four corners of the agreement, a factual determination of intent may be necessary to ascertain the provision's meaning. Inland Refuse Transfer Co. v.Browning-Ferris Indus. of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322. In making such a factual determination, "the court may use extrinsic evidence to facilitate the inquiry." Kelly v. Med. Life Ins. Co. (1987),31 Ohio St.3d 130, 132. Extrinsic evidence, however, is inadmissible when it is sought to contradict the express terms of the written agreement.Shifrin v. Forest City Ent., Inc., 64 Ohio St.3d 635, 638, 1992-Ohio-28.
 {¶ 21} "A court's primary objective in interpreting a written contract is to ascertain the intent of the parties as expressed in the terms of the agreement." Hamilton Ins. Serv., Inc. v. Nationwide Ins.Cos., 86 Ohio St.3d 270, 273, 1998-Ohio-162. Thus, a contract should be construed in a manner to give effect to the intentions of the parties. Id. The agreement of parties to a written contract is to be ascertained from the language of the instrument itself, and there can be no implication inconsistent with the express terms thereof. Id. at 274, citing Latina v. Woodpath Dev. Co. (1991), 57 Ohio St.3d 212, 214. See, also, Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus.
 {¶ 22} The letter states, "[t]hese costs should not exceed $6,000. When the project is developed, theses costs will be applied to the applicable budget line and equity for the project." We must determine whether the parties' agreement is unclear or ambiguous with respect to the $6,000 figure in the letter of intent.
 {¶ 23} After reviewing the agreement, we conclude that the $6,000 figure in the letter of intent was an estimate. Furthermore, the changes to the plans, at Peterbilt's request, resulted in additional costs above the initial $6,000 figure. Peterbilt was advised that the design costs were going to exceed the initial anticipated amount. Therefore, the second assignment of error is overruled.
 Assignment of Error No. 3: {¶ 24} "THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE LETTER OF INTENT WAS MODIFIED BY AN ORAL AGREEMENT ON JULY 18, 2000."
 {¶ 25} During a meeting between Gordon and Peterbilt on July 18, 2000, Al Daugherty asked Gordon, "[w]ho do you suppose is going to pay for all these drawings at this point." According to Daugherty, Gordon replied that the drawings were included in the cost of doing business and would be in the building cost unless Peterbilt secured another contractor to construct the building, in which case there would be a charge.
 {¶ 26} Peterbilt argues that this conversation orally modified the parties' agreement contained in the letter of intent. Peterbilt contends that the consideration for the oral modification was that Peterbilt allowed Gordon "to continue to estimate the project, allowing Gordon an opportunity to try to sell a building." Therefore, Peterbilt argues it "owes nothing to Gordon for the initial drawings."
 {¶ 27} An oral agreement, to have the effect of altering a prior written agreement, must be a valid and binding contract in its own right resting upon some new and distinct consideration for the oral agreement.Richland Builders v. Thome (1950), 88 Ohio App. 520, 525.
 {¶ 28} The letter of intent states, "[t]his document constitutes an agreement between your agency and Gordon Construction Inc. whereby services will be provided to develop preliminary construction documents for a new service facility." Allowing Gordon to continue to estimate the project in an attempt to sell Peterbilt a building does not provide a new and distinct consideration for an oral agreement, and therefore, it is not a valid and binding modification. Consequently, there was no oral modification of the agreement. The third assignment of error is overruled.
 Assignment of Error No. 4: {¶ 29} "THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW."
 {¶ 30} Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evi dence. C.E. Morris Co. v.Foley Construction (1978), 54 Ohio St.2d 279, 280. It must be remembered, however, that the weight to be given the evidence presented and the credibility of the witnesses are primarily matters for the trier of fact. Polly v. Coffey, Clermont App. No. CA2002-06-047, 2003-Ohio-509, at ¶ 34. The trier of fact's decision is owed deference since the trier of fact is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 31} After reviewing the entire record, weighing the evidence and all inferences, considering the credibility of the witnesses, we find that there was competent and credible evidence to support the trial court's finding that $6,000 cost term was an estimate, that the letter of intent was not modified by an oral agreement, and in awarding prejudgment interest. Therefore, the trial court's decision was not contrary to law or against the weight of the evidence. The fourth assignment of error is overruled.
Judgment affirmed.
YOUNG, J., concurs.
VALEN, P.J., dissents.